UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOANNE CARROLL,
    Plaintiff,

v.                                                   CIVIL ACTION NO.
                                                       96-10700-WGY

MICHAEL J. DeYOUNG and
ROXANNE BERY,
a.k.a. ROXANNE THOMPSON,
    Defendants.

**REPORT AND RECOMMENDATION RE:
MOTION TO AMEND COMPLAINT FOR CONTEMPT[1]
(DOCKET ENTRY # 44)**

**August 3, 2012**

**BOWLER, U.S.M.J.**

    On January 13, 2012, plaintiff Joanne Carroll ("plaintiff") filed an "amended motion for contempt" (Docket Entry # 44) incorporating a previously filed "complaint for contempt" (Docket Entry # 42). In substance, the filings (Docket Entry ## 42 & 44) seek to enforce a prior judgment and to attach defendant Michael J. DeYoung's ("DeYoung") wages in order to satisfy an outstanding judgment. Plaintiff is proceeding pro se and thus afforded "a measure of latitude in procedural matters." See Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001). Accordingly, this court construes the filings as motions.

    After hearing oral argument on January 26, 2012, this court

---
[1] The pro se filing is not captioned as a motion.

instructed DeYoung to file an affidavit within 14 days containing his end of the year pay stub, most recent pay stub and the sales receipt for the trade-in of his 2006 Dodge RAM vehicle. On February 9, 2012, DeYoung filed the affidavit (Docket Entry # 46), three pay stubs (an end of the year pay stub and his two most recent pay stubs) (Docket Entry # 46, Ex. A), the sales receipt and a financial statement on a form issued by the United States District Court for the District of Massachusetts. (Docket Entry # 46, Ex. A-C). The amended motion for contempt (Docket Entry # 44) is therefore ripe for review.

PROCEDURAL BACKGROUND

Carroll originally brought suit in United States District Court for the District of Massachusetts asserting a racketeer influenced and corrupt organization claim under 18 U.S.C. § 1962(c) and a conspiracy to violate racketeer influenced and corrupt organization claim under 18 U.S.C. § 1962(d) against DeYoung and defendant Roxanne Bery, a.k.a. Roxanne Thompson ("Bery"), in April 1996. (Docket Entry ## 1 & 31).

On July 17, 1998, after obtaining a notice of default due to DeYoung's failure to respond to the complaint, Carroll filed a motion for default judgment (Docket Entry # 16) seeking a judgment in the amount of $27,968.00 for 184 weeks of unpaid child support payments from November 1, 1992 to June 1, 1996.

2

(Docket Entry # 16, Ex. B). The district judge allowed the motion for default judgment (Docket Entry # 16) on July 28, 1998.

On July 9, 1999, the district judge entered a final judgment ("federal judgment") against DeYoung in the amount of $27,968.00 and dismissed Bery. (Docket Entry # 18). On May 26, 2000, the district judge issued a first writ of execution against DeYoung. (Docket Entry # 19, Ex. 1).

On October 29, 2007, Carroll filed a petition for summary process. (Docket Entry # 19). This court construed the petition as a motion to enforce the federal judgment under Rule 69, Fed. R. Civ. P. (Docket Entry # 22, p. 2). On July 1, 2008, this court issued a Report and Recommendation recommending that the motion to enforce judgment (Docket Entry # 22) be denied without prejudice. On September 8, 2008, the district judge adopted the Report and Recommendation.

On October 17, 2008, Carroll filed a renewed motion to enforce judgment. (Docket Entry # 23). On October 31, 2008, DeYoung filed an opposition stating that he did not have the "income or financial assets to make any payment on the judgment at this time as a result of [his] past, present and future child support obligations to [Carroll]." (Docket Entry # 24). On November 25, 2008, this court ordered DeYoung to file a financial statement in affidavit form listing all property and other financial assets. This court also explained that it would

conduct an examination of DeYoung's assets and ability to pay on a written record pursuant to section 15 of Massachusetts General Laws chapter 224. On December 16, 2008, DeYoung filed the financial statement (Docket Entry # 27), an affidavit ("first affidavit") and a copy of the Massachusetts Department of Revenue Child Support Enforcement System ("CSE/DOR") Financial Summary Report. (Docket Entry # 28, Ex. A).

In a procedural order dated April 8, 2009, this court instructed DeYoung to submit a supplemental affidavit detailing his ability to pay and any statutory exemptions that might apply on or before May 8, 2009. (Docket Entry # 29). DeYoung filed the supplemental affidavit on May 7, 2009, and attached the aforementioned financial statement specifying his income and expenses. (Docket Entry # 30).

On August 17, 2009, this court issued a Report and Recommendation (Docket Entry # 31) finding that this court has personal jurisdiction over DeYoung and that he has the financial ability to pay the federal judgment. This court recommended that DeYoung be ordered to make a monthly payment of $424.12 to Carroll as partial payment on the federal judgment. (Docket Entry # 31). Additionally, this court recommended that DeYoung "be ordered to execute, acknowledge and/or deliver to Carroll a transfer, assignment and/or conveyance of his entire interest in the Dodge RAM and the 401(k) retirement plan." (Docket Entry #

31). The district court adopted the Report and Recommendation on September 11, 2009.

On December 22, 2011, Carroll filed the motion for contempt against DeYoung. (Docket Entry # 42). On January 13, 2012, Carroll filed the amended motion for contempt. (Docket Entry # 44). The amended motion incorporates the December 2011 motion for contempt. The motions (Docket Entry ## 42 & 44) seek an order for DeYoung to pay all outstanding debts (starting in July 2011), to attach DeYoung's pay to satisfy current outstanding payments and to ensure future payments, as well as an order to pay the equity of the vehicle sold by DeYoung. DeYoung opposes the amended motion (Docket # 45) because Carroll failed to serve him with process on the complaint and because he lacks the financial ability to make such payments to Carroll.

FACTUAL BACKGROUND

In opposition to the motion for contempt, DeYoung "admits that he missed monthly payments to the plaintiff, but denies he is in contempt of any court order or judgment as he has not had the financial ability to make the payments." (Docket Entry # 45, ¶ 1). DeYoung also contends that the Dodge RAM "does not have any equity value in excess of the Seven Thousand Five Hundred Dollars ($7,500.00) exemption" of paragraph 16 of section 34 of Massachusetts General Laws chapter 235. (Docket Entry # 45, ¶ 2). DeYoung's affidavit (Docket Entry # 46) reads:

5

> The dealer gave me a used trade-in allowance of $14,000.00 for my 2006 Dodge RAM 2500 pickup, and there was a balance owed on the truck of $12,731.61. This resulted in a net allowance for the trade in of $1,268.39. This amount was applied to the purchase of the 2006 Dodge Charger [("Dodge Charger")] that I purchased. I financed the unpaid balance due with a used car loan. I do not believe that there is currently any equity value in the car in light of the fact that the original amount of the car loan was approximately the same as the sale price of the car.

(Docket Entry # 46, ¶ 3). The sales receipt submitted with the affidavit reflects this transaction. (Docket Entry # 46-2).

DeYoung also submitted three pay stubs from Halliburton Energy Service, Inc. ("Halliburton"). (Docket Entry # 46, Ex. A). The pay stub for the December 18 to 23, 2011 time period ("first pay stub") indicates a gross pay of $2,622.16; a pre-tax deduction of $40.84; a total tax deduction of $695.42; an after-tax deduction of $ 380.91 ($258.90 for child support, $2.50 for company fee support, $9.64 for life insurance and $109.87 for 401(k) payment) and thus a net pay of $1,505.19. (Docket Entry # 46-1, p. 1). The pay stub for the January 1 to 6, 2012 time period ("second pay stub") shows a gross pay of $2,346.53; a pre-tax deduction of $42.79; a total tax deduction of $643.36; an after-tax deduction of $381.17 and a net pay of $1,279.21. (Docket Entry # 46-1, p. 2). Finally, the pay stub for the January 15 to 30, 2012 time period details a gross pay of $2,096.96; a pre-tax deduction of $42.79; a total tax deduction of $453.53; an after-tax deduction of $381.17; and a net pay of

$1,219.47.  (Docket Entry # 46-1, p. 3).

DeYoung's updated financial statement shows a weekly gross pay of $1,329.99.  (Docket Entry # 46-3, p. 1).  His net weekly income, after deductions, is listed as $778.27.  His gross annual income from the prior year (2011) is $69,159.34.  (Docket Entry # 46-3, p. 2).  DeYoung did not attach a copy of the W-2 and the 1099 forms as instructed by the directions in the financial statement.  (Docket Entry # 46-3).

## DISCUSSION

I. Contempt Claim

Carroll requests this court to find DeYoung in contempt for his failure to comply with the August 17, 2009 Report and Recommendation that was adopted by the district court judge on September 11, 2009.[2]  Federal district courts have the power to punish "contumacious conduct" and to issue sanctions for civil contempt.  United States v. Horn, 29 F. 3d 754, 763 (1st Cir. 1994).  Furthermore, a magistrate judge may exercise the civil contempt authority of the federal district court.  29 U.S.C. § 636(e)(4).  Nevertheless, when a party fails to satisfy a federal judgment "the appropriate remedy is an execution and not a finding of contempt."  Aetna Casualty & Surety Co. v. Markarian, 114 F.3d 346, 349 (1st Cir. 1997).  A contempt proceeding to

---

[2] The August 17, 2009 Report and Recommendation ordered DeYoung to make partial payments in order to comply with the 1999 federal judgment of $27,968.00.  (Docket Entry # 18).

7

enforce a civil money judgment is inappropriate except when "well established principles (so) warrant." Markarian, 114 F.3d at 349. Situations in which the judgment debtor is uncooperative or the location of the assets makes execution difficult do not present circumstances that warrant contempt proceedings. See Id.; see also Hilao v. Estate of Marcos, 95 F.3d 848, 854 (9th Cir. 1996); Gabovitch v. Lundy, 584 F.2d 559, 560-61 (1st Cir. 1978).

As explained in the previous report and recommendation (Docket Entry # 31), unless the court directs otherwise, a money judgment entered in a federal court "is enforced by a writ of execution." Rule 69(a)(1), Fed. R. Civ. P. The procedure on execution and in aid of judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Rule 69(a)(1), Fed. R. Civ. P.; see Whitfield v. Municipality of Fajardo, 564 F.3d 40, 43 (1st Cir. 2009). "Courts have consistently read Rule 69(a) as limiting all federal process on money judgments to the type of process available under state law." Gabovitch, 584 F.2d at 560. Therefore, because a claim for contempt is not the appropriate manner to enforce a money judgment, the amended motion for contempt (Docket Entry # 44) is without merit. Carroll is not, however, without a remedy. As discussed in the next section, she

may seek a writ of execution in the state in which the property resides.[3]

## II. Enforcement of 2009 Order

With respect to Carroll's request for outstanding payments pursuant to the September 11, 2009 Order, adopting the Report and Recommendation, Carroll may pursue such payments in a Colorado federal court. Because of her pro se status, this court turns to a discussion of this avenue of relief.

To obtain payments, Carroll should register both the July 9, 1999 federal judgment and the September 11, 2009 Order in compliance with federal law. (Docket Entry ## 18 & 31). The statute provides in pertinent part that:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade **may be registered by filing a certified copy of the judgment** in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown . . . .. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphasis added); see Baker by Thomas v. General Motors Corp., 522 U.S. 222, 235 (1998). Additionally, "enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject

---

[3] It is not necessary to consider DeYoung's alternative argument of lack of service in light of the above recommended ruling.

to the evenhanded control of forum law." See Baker, 552 U.S. at 235. Therefore, because the subject property resides in Colorado, a Colorado court is the appropriate court to enforce the Massachusetts order. Carroll should file a certified copy of the September 11, 2009 court order (along with the July 9, 1999 federal judgment) in the United States District Court for the District of Colorado. This will allow Carroll to pursue enforcement of the order under Colorado law in a Colorado court. The website of the Colorado federal district court (http://www.cod.uscourts.gov/Forms.aspx) provides sample writs of execution that can be used as methods of enforcement once the September 11, 2009 Order is properly registered in Colorado.[4]

III. Attachment of Wages

Carroll also requests this court to attach DeYoung's wages so as to satisfy future payments. Rule 4.1(a) of the Massachusetts Rules of Civil Procedure states that, "real estate,

---

[4] The procedure to register a federal judgment in another district requires that the Clerk of the Court complete a court form entitled: "Certification of Judgment for Registration in Another District" to which the Clerk of the Court will attach a certified copy of the judgment. This is then filed in the federal district court where the creditor seeks to enforce the judgment. The filing fee is minimal and no notice of the filing is required to be given to the judgment debtor. Upon filing, the judgment becomes a judgment of that district and the creditor can immediately seek to enforce the judgment. Federal court judgments are enforced in accordance with the legal procedures authorized by the laws of the state where the federal district court is located. The Clerk's office for United States District Court for the District of Colorado can be reached at (303) 844-3433.

goods and chattels and other property may, in the manner and to the extent provided by law, but subject to the requirements of this rule, be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover." The rule allows this court to attach property, but limits it to property found within Massachusetts. Thus, "[I]t must be presumed that Rule 4.1 governs only the attachment of property located within the borders of the state of Massachusetts." Stephens v. Walker, 743 F.Supp 670 (W.D.Ark. 1990). Because DeYoung's wages are earned in Colorado, not Massachusetts, a writ of attachment will need to be filed in the United States District Court for the District of Colorado. The court's website (http://www.cod.uscourts.gov/Forms.aspx) provides sample writs of attachment that can be used.

IV. Equity in Vehicle Sold

On September 11, 2009, DeYoung was ordered to deliver to Carroll his entire interest in the 2006 Dodge Ram. As evidenced in DeYoung's affidavit, the vehicle was not sold with the proceeds delivered to Carroll pursuant to the 2009 court order. Instead, the 2006 Dodge Ram was used as a trade-in to help finance the purchase of a 2006 Dodge Charger. The sales receipt reflects that the trade-in provided an allowance of $14,000.00, however, DeYoung only had a $1,268.39 equitable interest in the vehicle. In accordance with the September 11, 2009 Order, the

$1,268.39 should be conveyed to Carroll.  The appropriate means to obtain relief, however, is to seek relief in the United States District Court for the District of Colorado where the property is located.

CONCLUSION

In accordance and as provided in the foregoing discussion, this court **RECOMMENDS**[5] that the motion for contempt (Docket Entry # 44) be **DENIED**.  A writ of execution, not a motion for contempt, is the appropriate manner to enforce a civil money judgment.

/s/ Marianne B. Bowler_____
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.